RUTH NASSEN, Appellee, v. THOMAS ANFENSON et al., Appellants.

**INFANTS:** Disability in General—Guardians—Right of Minor to
1   Choose—Estoppel. A minor of sound mind reaches his or her majority at the age of 14 years *for the purpose of selecting a guardian of property.* (Section 3195, Code, 1897.) It follows that a minor over 14 years of age who selects his or her property guardian may be estopped to deny such guardianship.
    EVANS, J., concurs.
    GAYNOR, C. J., and LADD, J., withhold judgment on the discussion under this point.
    WEAVER, PRESTON and STEVENS, JJ., did not sit in case.

**GUARDIAN AND WARD:** Custody of Ward's Estate—Failure to
2   Qualify—Ratification—Estoppel. One who, on reaching majority, knows that funds belonging to him have, in good faith, been paid to a supposed guardian (appointed on motion of the claimant while a minor), and for more than a year recognizes the rightfulness of the payment to said supposed guardian, collects a part of the funds from such guardian, and in no wise repudiates such payment until he discovers that said supposed guardian has never qualified and is insolvent, is estopped to deny that such guardian is his guardian. Such conduct constitutes such supposed guardian an *agent by ratification.*

*Appeal from Hamilton District Court.*—R. M. WRIGHT, Judge.

TUESDAY, JUNE 26, 1917.

REHEARING DENIED SATURDAY, SEPTEMBER 29, 1917.

ACTION in equity to foreclose a mortgage securing a note given by the defendants to the guardian of the plaintiff. The plaintiff prevailed, and defendants appeal.—*Reversed.*

*D. C. Chase,* for appellants.

*O. J. Henderson,* for appellee.

SALINGER, J.—I. This much stands admitted, or is clearly proven: About May 11, 1904, defendant Thomas Anfenson made to one Iverson, as guardian of the property of plaintiff, then a minor, his note for the principal sum of $529.17, with interest at 6% per annum, due February 13, 1915; to secure the payment of the note, both defendants made to Iverson, as guardian, a mortgage on premises described. Iverson died on October 25, 1911. At this time, the plaintiff was still a minor, but she was over 14 years of age when, on December 18, 1911, she, at the suggestion of the defendant Thomas Anfenson, who is her stepfather, made application that Himmel be appointed guardian to succeed Iverson. The administrator of Iverson notified that it was necessary to have a guardian appointed to receive this note and mortgage, and he says as a witness that "they" wanted Himmel. At this time, Himmel was a banker in reputable standing On May 21, 1912, Himmell was appointed guardian, and his bond fixed at $2,400. The clerk of the proper court testifies:

"Q. I ask you if you can state from your examination of the records that no bond or oath or qualification has ever been filed by J. E. Himmel as such guardian. A. No, sir."

The witness adds that no letters of guardianship were ever issued to Himmel. The administrator of Iverson turned the note and mortgage over to Himmel, and Himmel,

1. INFANTS: disability in general: guardians: right of minor to choose: estoppel.

on May 21, 1912, receipted therefor as guardian. Both plaintiff and defendant Thomas Anfenson understood at this time that Himmel was acting as her guardian. He had in his hands moneys belonging to plaintiff other than what was paid him on the note given by defendants. She never made inquiry whether Himmel had qualified, and assumed that he had. It is conceded that Anfenson paid the note to Himmel and that Himmel acknowledged payment as guardian, conceded that neither before nor then did plaintiff or defendant know that Himmel had failed to qualify and give bond, and that Anfenson made full payment to Himmel about six days before plaintiff became of age, in good-faith belief that he was plaintiff's duly appointed guardian, and conceded that plaintiff erroneously assumed that he was such duly qualified guardian until, long after payment of the said note to Himmel, he went into bankruptcy, when it developed for the first time that he had utterly failed to qualify, and was wholly insolvent.

Defendant asked plaintiff, about three weeks before she became of age, and, therefore, about two weeks before he made payment to Himmel, whether she wanted that money when she became of age, and she said, "Yes." The note was not due until April, 1915, but he raised some grain and paid the note to Himmel before it was due, some six days before plaintiff became of age, and understood at that time that he was plaintiff's guardian. As will appear, Himmel paid plaintiff part of what was paid him on the note. She never told defendant of the payment Himmel had made to her; never asked defendant about the money after he paid it to Himmel, and said nothing about her note or any money until Himmel went into bankruptcy, more than a year after defendant made payment. There appears this in the testimony:

"Q. Well, what did you think Himmel would pay you $300 for, if he hadn't collected anything of your step-

father? A. Well, the agreement was made when he was appointed guardian that Mr. Anfenson was to pay it, and I supposed he had, and not asking him, I didn't know."

II. Though Himmel did not qualify, yet it was plaintiff whom the statute authorized to take and who took the step without which Himmel could not be her guardian, and in the absence of which he would not have acted as her guardian. She alone had power to select him. She had power to deal with any situation created by and to obviate results that might flow from his failure to take steps to qualify him; because, if he did not qualify, there was no guardian chosen, and she could choose another. Defendant had no such power. When she held Himmel out to be her guardian, she did not know he had not qualified. But neither did defendant know of the failure to qualify, when he paid Himmel. She did what defendant did not do. She held Himmel out to be her guardian; she permitted her note and mortgage to remain with him. Thus she laid the foundation upon which Himmel could work a fraud upon anyone who in good faith believed that Himmel was authorized to act as guardian and to take payment upon the note and mortgage which he had in his possession. More, the record fairly shows that, shortly before her minority ended, plaintiff had reason to believe that defendant would pay this note to Himmel, and made no objection. The position of plaintiff is that, though more than 14 years old, she was still a minor in such sense that no act or omission on her part could estop her to deny that Himmel was her guardian, and that here is a naked case of payment made to one who had no authority to receive it. This position is sound if she had been less than 14 years old. The question is whether Section 3195, Code, 1897, worked a limited manumission which subjects her to being estopped to deny that a guardian chosen by her is not legally her guardian.

What is it that creates the disabilities and grants the immunities of minority? The legislature. Who can take away wholly all disability or immunity? The legislature. If it can take away all, it can take away part. Majority and minority and municipal corporations are alike the creatures of statute. And in *School District of Fairview v. School District of Burlington,* 139 Iowa 249, we said of the last that they are such creatures; that their existence, powers, rights and privileges are all creatures of legislative will; and that the power that made them can unmake, and the power that gave them can withhold or take away.

What has the legislature done? Section 3195 of the Code of 1897 is:

"A minor over fourteen years of age, of sound mind, may select the guardian, subject to approval by the district court, or a judge thereof, of the county in which his parents reside, if living with them, if not, of the county of his residence."

It is suggested that this but recognizes that one over 14 is old enough to make it important that there shall be no friction because a personal guardian is not pleasing to the ward. But that could not have been the object of the statute. It deals wholly with a guardian over property. Section 3194, Code, 1897, which deals with guardianship of property, is its antecedent. The parents are the guardians of the person, and no other is to be appointed as long as there are parents. Yet Section 3195 permits the choosing of a guardian while the parents are living. All of which emphasizes that the selection which it authorizes is of a guardian to manage property.

Why is it not plainly the purpose of the statute to recognize that, when 14 is reached, youth no longer negatives intelligence to choose a proper guardian of property,—to declare that, when and after that age is attained, there exists

an ability to do business as to this particular thing which was not possessed before? It was intended that none save persons of sufficient intelligence to make it properly should be permitted to select, because the statute, in terms, excludes those who are not of sound mind. Taking into consideration statutes *in pari materia,* we find other instances wherein the legislature recognizes that, though a minor, one may be qualified to do some things, properly. Though a minor, one may maintain actions for nuisance, waste and tres-pass done in the time of his ancestor, as well as in his own time. Section 4308, Code, 1897. When younger than 14, service of notice must be made on someone other than him. After he has reached 14, service on him is sufficient. Section 3533, Code, 1897. He is bound by notice of appeal served on him. *Brundage v. Cheneworth,* 101 Iowa 256. True, the selection of a guardian made by him must have the approval of the court, but, manifestly, one may be liable for acts done by him though the act is to be done only upon an approval. An administrator may not, without an approval, bind the estate, at least as to some things. But the very fact that he does them without such approval will make him liable individually. At this point we must try to avoid reasoning in a circle. We must not say that selection is authorized because ability is recognized; that approval of selection and qualifying is necessary to give powers to the one selected, as to the world at large; that the selector can insure an approved selection and qualification by the one selected, because he can make a new selection until there is an approval and qualification, but that, if he fails to get the approval or the qualification, which he has power to insure because he is recognized as having the necessary intelligence, this proves that the power given him was not a recognition of his having such intelligence.

It may be said that it is unreasonable and arbitrary to authorize one at 14 years of age to select a guardian to

manage his property. Many will so say as to the statute which ends minority in males at 21, in females at 18, and which allows all minors to attain full majority by marriage. As to the last, it removes all disability, while Section 3195 removes but part. .The same argument can be more strongly urged against authorizing service of original notice and of notice of appeal to be made on one who has attained 14 years. To a certainty, one of that age may be as well qualified to select a guardian to manage his property as he is to determine whether to defend against a suit or an appeal which may take all of his property from him. Even more strongly may the statute be arraigned which permits a minor of any age to maintain actions for nuisance, waste and trespass done before or in his time. We might well content ourselves by saying that, if it were not clear that authority to do these things had been granted by the legislature, we would consider that upon the question *whether* manumission with reference to guardianship was granted, or these other acts authorized. But, as said in *School District of Fairview v. School District of Burlington,* 139 Iowa 249, while it is true that legislative power may be unwisely exercised, and that a statute generally wise may operate oppressively in individual instances, such matters are for legislative consideration. If the legislature *has* removed a disability, taken away a privilege or an immunity, or granted a right or a power, we can do nothing, though the action be arbitrary or unreasonable. That the legislature has so ordered is the all-sufficing answer, though it were conceded that it acted unwisely and improvidently. All these things matter only if there be reasonable doubt on whether it has acted as claimed. We might well stop here; but it is not to be said, either, that the statute exhibits any unreasonableness. What if the time limit fixed is arbitrary? In the very nature of things it must be. Boys

become entitled to all the privileges of an adult when they reach 21.   Some are fully able to take the responsibility of a major when they are 19.   Some never become thus able. But we would not undertake to say that, therefore, majority for the male was not established at 21, nor that it was an unreasonable time.   It can be said that, if it be wise to stop minority in a male at 21, it is unwise to do the same thing for a female at 18.   Certainly, many instances can be thought of wherein it has proved unwise to have minority removed by a marriage before the statute age discontinuing minority has been reached.   But all will concede that such objections must be addressed to the legislature, and that there is nothing so unreasonable as that a court could hold that majority was not reached at 18, and that marriage did not work an attainment of majority.

These and other statutes on the same subject can be said to be unreasonable only if it be against reason to couple a grant of power or removal of a disability with corresponding duty, obligation and responsibility.   On that reasoning, the minor who is authorized to maintain an action for nuisance, waste and trespass is not bound to pay the costs of suit, if the one he institutes be defeated.   Before he is 14, no valid service of notice can be had upon him.   He may be effectively served after he has reached that age.   Is he as little bound by the notice which may, as by the one that might not, be served upon him?   After he is 14, substituted service may be had upon him, binding others.   On what theory?   Manifestly, by entertaining the conclusive presumption that he has intelligence enough to apprehend the effect of the service, and that he will advise the member of the family impleaded of having been served.   In this illustrated case, there is more than a recognition of ability to act for himself.   He is made the agent of another, and that other is bound and may suffer,

if the agent do not do the duty which the law presumes he will perform.

If we are to go into the question of reasonableness, the legislature had to fix an arbitrary time, and must be credited with having had all the possibilities in view when it made this time limit. If it can be said that it seems unreasonable to give a 14-year old girl powers which would make her responsible if her negligence in either selecting or having qualified a guardian injured another, it must also be said that, without this statute, a girl just one day short of being 18, or a boy just one day short of being 21, could deliberately defraud another by a pretense that one receiving payment was a duly qualified guardian, and yet escape all liability. And truly illuminative is the provision of Section 3190, Code, 1897, that a minor may not disaffirm his contracts where, on account of his having engaged in business as an adult, the other party had good reason to believe him capable of contracting. The legislature, being obliged to fix an arbitrary time, must have had all the periods and possibilities we have spoken of in view. In view of all this, it is not unreasonable to provide that minority was removed after a person of sound mind attained the age of 14, to the extent of making such person responsible if something done or not done by him in the selecting of a guardian subjected another not in fault to an injury. And it should be borne in mind that, if this statute does not create a limited manumission, it is because we must hold that the statute had no purpose. Without it, this plaintiff could not be estopped or have any responsibility concerning the appointment of a guardian until she became 18 or married. If that is still so, notwithstanding the enactment of this statute, then there was no occasion for the enactment.

We think the plea of minority does not avail to pre-

vent plaintiff from being estopped to deny that Himmel was her guardian.

III.   Grant, for the sake of argument,

2. GUARDIAN AND WARD: custody of ward's estate: failure to qualify: ratification: estoppel.

that nothing done or omitted before she reached 18 can bind her. We have next to consider what she did after she was 18. She then did what clearly amounts to taking part of what had been paid to Himmel, knowing he had been paid the note, and extending credit to him for the balance. For it appears that she made repeated efforts to get money from Himmel, called on him for that purpose several times; she found him absent, but finally did meet him in April, 1914, more than a year after the note had been paid to Himmel, and then attempted to collect what had been paid. At this time, she still supposed he had been her guardian. In her own words, he paid her $300, put her off for the rest, and in a couple of weeks he went into bankruptcy. She understood that the $300 paid her was part of what Anfenson paid on his note. Himmel admitted he had collected the note, paid the $300, and said he couldn't pay all of it then; that she should wait a couple of weeks and he would pay her the balance when he straightened it up in court. He refused to pay her the balance on the pretext that he could not do so until the next term of court, when he would make an accounting and settlement with her in full. There can be no question of her attitude with reference to considering Himmel a debtor. She complained because he had not paid her, and spoke of it as a failure to receive the balance of her estate, and it was only at the very last that she thought of suing her stepfather.

She deferred all activities towards collection until collection had become hopeless. It was only after Himmel went into bankruptcy that she took steps to ascertain whether he had a bond, and consulted lawyers to that end. It was then that she first proposed to collect the balance of

him and his bondsmen, if she could.

One theory advanced by appellee is that defendant has suffered no prejudice, and therefore no estoppel arises. It is not at all clear that prejudice is lacking. If more pressure had been brought to bear by her, Himmel might have paid all, rather than part. Had she, as soon as she could after becoming of age, advised defendant of the situation, he might have forced, or attempted to force, Himmel to pay over the balance. She preferred to make Himmel her debtor. But, in a sense, the presence of prejudice is quite beside the question, which is, how plaintiff may deny that Himmel was her agent to receive full payment on the note; how she can avoid the agency by ratifying only so much of what her agent did as is to her profit.

In this suit, she concedes that the part that Himmel paid over to her is a credit to defendant, and he was given such credit. Assume that she never gave Himmel original authority to collect this note, yet ratification is equal to original authority. We see no escape from holding that there was an agency by ratification. If defendant is now entitled to a credit for part of what Himmel received, it must be because Himmel was empowered to receive all. Where one receives $600 for another, and that other is advised of the fact, he may not take $300 of the sum paid in, agree to defer payment of the balance, treat the $300 paid over as received upon authority, and deny that there was authority to receive all because part was not paid over. We cannot escape it will not avail to say that an agent who was authorized to receive $600 paid her but half of that sum. In essence, the trial court permitted a ratification which adopted only so much as was beneficial to plaintiff. We are of opinion that Himmel was the agent of this plaintiff and never the agent of the defendant, and that any loss suffered because the agent was guilty of a breach

of duty must fall on the plaintiff and not upon the defendant.

### 3-a.

It is urged that, though Himmel had the note in his possession, defendant cannot be said to have paid the note to one apparently the rightful holder or owner thereof. The argument is that this results from the fact that the note bore no endorsement of payment other than interest, and that the mortgage was never formally released. We do not agree to such deduction from these premises.

It follows that the decree of the district court must be —*Reversed.*

GAYNOR, C. J., and LADD, J., concur in the result, but do not wish to be bound by Paragraph II of the opinion. EVANS J., concurs.